## No. 20,520.

JOY SYLVESTER GRIFFITH *v.* ALLEN GRIFFITH.
(381 P. [2d] 455)

Decided May 13, 1963.

Mr. JACK W. FOUTCH, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiff in error as Joy or plaintiff, and to defendant in error as Allen or defendant.

In 1951 Joy commenced an action for divorce in the district court of Huerfano county. Allen responded by answer and cross-complaint. Upon trial of the issues to a jury Allen was found not guilty of the acts of cruelty charged against him, and Joy was found guilty of cruelty as charged by Allen. A divorce decree was awarded to him.

The trial court entered judgment directing the payment by Allen of $2,500.00 in settlement of property rights between the parties, and ordered him to pay $75.00 per month into the registry of the court for the support and maintenance of Karen Dee Griffith, the minor child of the parties, whose custody had been awarded to Joy. The court further ordered Allen to pay attorney's fees and "all necessary medical, surgical, dental, medicinal and clothing bills incurred on behalf of said minor child and presented to the defendant."

It is admitted that Allen complied with all orders except that which directed the payment of $75.00 per month into the registry of the court for the support of the child, and with which he failed to comply after January 23, 1953. It is further admitted that in 1953 medical expenses for surgery amounted to about $1,400.00.

Joy remarried shortly after the final decree of divorce. Allen was not able to enjoy visitations with his daughter for many reasons, including the fact that Joy and her husband at various times lived in Massachusetts, Indiana, and Wyoming, during which times he was not informed of his daughter's whereabouts. It was also shown to the satisfaction of the trial court at the hearing hereinafter referred to, that the new husband had told him: "Stay away, we don't want you or your money, stay out of here."

It is not disputed that in 1955 Allen filed an affidavit

in the divorce action in which he set forth his drastically changed financial circumstances, clearly indicating an inability to comply with the court orders during the years 1952 through 1955. This affidavit was filed at a time when he had no information concerning the whereabouts of Joy and his daughter and was filed "upon advice of an attorney."

August 11, 1961, Joy sought the entry of a judgment against Allen for the amount of all unpaid monthly support payments which she asserted amounted to $7,845.00. This application for judgment was made ex parte and the trial court entered judgment for $5,400.00 instead of the amount claimed by Joy in her motion for judgment. It was provided, however, that execution on the judgment be stayed for thirty days within which time Allen might move to vacate the same and to assert any defenses available to him.

September 5, 1961, counsel for Allen filed his motion to vacate the judgment in which he alleged, among other things, that Joy was estopped from obtaining judgment by her conduct, and that equity and good conscience required that the judgment be set aside.

An extended hearing was held by the trial court on Allen's motion. Allen, Joy, and her mother, gave their testimony. In the course of the hearing and at the conclusion of the evidence there was considerable discussion between the court and counsel for Joy, from which we quote the following:

"THE COURT: * * * What order do you recommend the court make now, specifically? I want your recommendation.

"MR. FOUTCH: I would be happy to if I have your leave to do so.

"THE COURT: You have leave.

"MR. FOUTCH: I would like this: this is what the plaintiff and the husband now want for their child: We would like a figure which would be arrived at through the joint consent of the defendant and the plaintiff, this

same figure which we attempted to get during the recess. We would like to have the matter settled once and for all allowing the defendant reasonable visitation rights.

"THE COURT: Leave the visitation out. I am asking what judgment as far as money and payment, do you recommend at this time?

"MR. FOUTCH: I did indicate to my clients and they indicated to me they would be very willing to settle for $2500.00 cash, to be paid upon this judgment, to be put in a trust fund.

\* \* \*

"MR. FOUTCH: \* \* \* We are not asking for something now we couldn't have gotten then, and that was for 1951, '52, '53, '54, and I believe, '55, because of his own admission in the letter in 1956 he stated he was now able to help.

\* \* \*

"THE COURT: I am familiar with all of those, [cases cited] but counsellor, if that be correct, you would be entitled to all of this intervening —

"MR. FOUTCH: — Under this theory, yes, and knowing we could be entitled under this theory, we are not asking for all of it.

"THE COURT: Do you feel that equity requires that that be reduced?

MR. FOUTCH: I think equity does in certain circumstances in the fact that during the three-year period the defendant was not able to make this money, there has been no claim upon that money by me representing the plaintiff, your honor. You asked me what I thought would be an equitable arrangement, I took this into consideration; \* \* \* That is basically why we are here, because we want the court to look into the equities of the matter, but not only one side of the matter.

\* \* \*

"MR. FOUTCH: My recommendation would be to make an equitable adjustment of this judgment; I am

not asking for the $5400.00. Thank you very much, your honor."

The trial court then vacated the judgment entered August 11, 1961, and in lieu thereof entered judgment in favor of the plaintiff in the amount of One Thousand and 00/100 Dollars. This amount was to have been paid into the registry fund of the district court within ninety days from August 27, 1962. The court further ordered the defendant to resume the support payments of Seventy-five and 00/100 Dollars per month starting September 10, 1962.

In justification of this modification of the original judgment the trial court made lengthy findings of fact, all of which are supported by the evidence and reasonable inferences to be drawn therefrom. From these findings we quote the following:

" * * * The file in this matter shows that on 'December 6, 1951, a decree of divorce was granted between Joy Sylvester Griffith and Allen Griffith in which reference was made to an order and property settlement between the husband and wife and support of $75.00 per month for the minor child of these parties. The file and the evidence further shows that the husband, the defendant in this case, was required to pay $2500.00 cash in property settlement, which he paid, and that he paid the support for the child of $75.00 a month until approximately January 1, 1953, with some small sum in arrears. The court further finds that the plaintiff remarried and the child lived with the mother and the step-father; that the defendant sought to see his child for visitation, that it was disagreeable, even turbulent circumstances when he called at his former wife's home to see the child; that the husband and step-father of the child told the defendant in no uncertain terms to stay away from the child, they didn't want his money. That the plaintiff concurred in this, and may have been responsible for such statements being made. The defendant assumed from this situation, that as far as the plaintiff and her

then husband were concerned, they did not, either of them, want the money for the support of the child, preferred not to have it, and the defendant was excused so far as the plaintiff and the then step-father of the child could excuse him, from the payments, and he relied upon it, and without reciting in detail the evidence, the court finds that deceit, subterfuge, secrecy, and fraud were practiced upon the defendant. He was lulled into a sense of security, so to speak, he relied upon it, depended upon it, and that situation existed until approximately one year ago when a request was made for a judgment for all of the deferred payments in the strictest sense. A judgment was entered for a substantial sum, considering the statute of limitations, at that time and that judgment has heretofore been mentioned.

"The court finds that this defendant, as long as he was able to do so financially, complied with every order of the court; that he paid the hospital bill for this little girl when she had surgery, which was vital and necessary, in fact, emergent. He became financially unable to make further payments, and on June 14, 1955, under the advice of counsel, had counsel file for him a memorandum setting out his financial situation, and indirectly at least, asked to be officially excused from further payments. The court finds that this, in effect, was an appeal to the court to suspend payments until the further order of the court, and the court then acted on that premise. At that time the defendant was in arrears two and a half years; that during this time as indicated above, the defendant had been led to believe that he would not be required to pay anything further and did not pay any appreciable amount, and was not able to pay. That during all of this period of approximately eight years the defendant did not know the whereabouts of his child or of his former wife who had custody of the child. For over two years of that period, when the husband was seeking his child, wanted to learn of her welfare, endeavoring to get Christmas presents and some money

to her, the child with her mother was living in Colorado Springs, less than 50 miles from where the defendant was situated. The defendant did not know this, but the court finds that the plaintiff and her mother were acting to keep the defendant from learning the whereabouts of said child. It also appears from the file of the court that the clerk of this court did not know the whereabouts of the plaintiff or, of course, the child, and as late as 1958, when it was desired to have a copy of the decree of divorce, one Joy Sylvester, whom I understand to be the mother, wrote for the copy, and not the plaintiff. It appears that the plaintiff had some idea and plan to keep the father from seeing the child. For what purposes, the court is not certain, and the evidence does not indicate the specific purpose unless if the husband failed long enough to support the child, it might be the requisite grounds for the plaintiff and her present husband, Mr. Dederick, adopting the child, but for whatever reason, the plaintiff's actions in this behalf have not been commendable, and the court doesn't approve.

" * * * it occurs to the court that to do justice and equity between the father in this case and the child, and the court does find that the father at all times herein has wanted to and sought to support this child, even after he was told in forcible language that his support was not needed, I might say forceful and obscene and vulgar language, it occurs to the court that the court should at this time require a lump sum payment to be made for the use and benefit of the child, and then monthly payments made regularly hereafter until the further order of the court."

█ It is argued as grounds for reversal that the trial court erred in entering a judgment, the effect of which was to cancel past due payments under an existing order of court for payment of support money. In support of this argument counsel for Joy cites cases including *Engleman v. Engleman,* 145 Colo. 299, 358 P. (2d) 864, in which the general rule, that an order reducing

the amount of support money operates only in futuro, was held to be applicable. The record before us in the instant case presents an entirely different situation than that shown in any of the cases upon which plaintiff relies.

In the trial court the position of plaintiff was made clear. In effect it was admitted that the judgment should be modified downward, that "equity" and good conscience required that relief be granted to Allen, and that the trial court should weigh the "equities" and make a reduction which would be fair to each of the parties. The trial court was told by counsel for Joy that the sum of $2500.00 would protect the rights of each of the parties. The trial court adjudged that a lesser sum would accomplish the objective which plaintiff's counsel admitted was before the court for consideration.

So far as the record here shows, the child was adequately maintained during the years her whereabouts were concealed from the defendant, and it appears that she wanted nothing necessary to her health, comfort and welfare. By her affirmative acts plaintiff voluntarily assumed responsibility for the child's support during those years, and under the state of the record before us she is not in a position to now claim reimbursement.

Plaintiff's attorney, after consultation with her and in her presence in open court, disclaimed any interest in upholding the $5400.00 judgment and recommended that it be set aside, and that a lesser sum be substituted in order to do justice to each of the parties. Under these circumstances the plaintiff cannot now change her position because the amount of the reduction is not to her liking.

The judgment is affirmed.